Statement of the Case.
NICHOLLS, J.
This suit is brought by the plaintiffs against John R. Gheens, individually, and the Golden Ranch Sugar & Cattle Company, Limited.
Plaintiffs allege that on or about the 15th of April, John R. Gheens, acting for himself, and as president and manager of the Golden Ranch Sugar & Cattle Company, Limited, entered into a definite agreement and contract with your petitioners by which the said Gheens, acting as above set forth, placed in the hands of petitioners for sale, as brokers, the entire holdings of the said Golden Ranch Sugar & Cattle Company, Limited, located in the parish of Lafourche, consisting of all real and personal property, sugar houses, cane crops, implements, mules, etc.; that petitioners were then and there authorized and directed by the said Gheens, acting as aforesaid, to procure a purchaser of said real and personal property for the price and sum of $650,000, and it was then and there agreed that, in case petitioners should procure such purchaser at such price, the said Gheens and the said Golden Ranch Sugar & Cattle Company, Limited, would pay to your petitioners .as a commission for effecting the said sale the sum of $50,000. Petitioners further show that the said holdings of the said Golden Ranch Sugar & Cattle Company, Limited, in the parish of La-fourche consisted of, as they claimed, about 45,000 acres of land, part thereof being cultivated as a sugar plantation, with a sugar house, mules, farming implements, and all other accessories of a sugar plantation; partly of large tracts of uncultivated land, and partly of large tracts of cypress timbered lands; and that all the property, real and personal, of whatever nature and description, of the said • Golden Ranch Sugar & Cattle Company, Limited, were included in the said agreement as above set out, to be sold for the price and sum of $650,000. That after a great deal of effort on their part, and after the expenditure by them of considerable amounts of money, they procured a purchaser and had made arrangements for the sale of the said property above referred to for the said sum of $650,000, and that said sale would have been consummated for the said price but for the fact that the said Gheens and the said Golden Ranch Sugar & Cattle Company, Limited, were not able to prove a good and valid title to only about 23,762 acres of the 45,000 acres which were to be included in the said sale. -That when it became apparent that the title to a large portion of the said property of the said Golden Ranch Sugar & Cattle Company, Limited, was imperfect, then another-and supplemental agreement was made between petitioners and the said Gheens and the said Golden Ranch Sugar & Cattle Company, Limited, to the effect that if petitioners succeeded in securing a purchaser for that portion of the property of the said Golden Ranch Sugar & Cattle Company, Limited, to which a perfect title could be made, and if the price should be satisfactory to the said Gheens, then and in that event such commission would be paid to your petitioners as would bear the same ratio to the purchase price actually paid to and received by the Golden Ranch Sugar & Cattle Company, Limited, as the originally agreed price of $650,000.
That, acting upon the said supplemental agreement, petitioners continued to offer said property to different parties until finally they interested one C. R. Ash, of Duluth, Minn., in the said proposition, and after a great,deal of work in making abstracts, in locating corners and lines, in making surveys, *797 cruising the timber, and doing and performing all the acts and things required of an agent in making a sale, they finally succeeded about the 1st day of August, 1906, in closing a contract of sale of the said property between the said C. R. Ash and the said John R. Gheens, president and manager of the said Golden Ranch Sugar & Cattle Company, Limited, for the sale of the Derbigny plantation, a part of the property owned by the said Golden Ranch Sugar & Cattle Company, Limited, and also for the sale of the cypress timber or trees on the remainder of the land belonging to the said company in the parish of Lafourche, together with the crop, mules, implements, etc., on the said sugar plantation, for the price and sum of $525,000.
That, when the said contract of sale was entered into, the said Ash paid the sum of $10,000 as earnest money, and it was agreed that the said purchaser should have until October 1, 1906, to close the sale; and it was further agreed that the sard Gheens should furnish to the said purchaser’s attorney abstracts, titles, etc., which would show said company’s title to the property contract to be sold.
Petitioners further showed that through no fault of theirs, but owing entirely to the defective title to the said property, they were unable to have the act of sale passed upon by the attorney of the said Ash, and that in consequence thereof the said Ash refused to close the said deal and to take the said property at that date, whereon the said defendants declared the contract off and claimed the said earnest money as forfeited to them. Petitioners further showed that acting upon the express authority of the said Gheens they did not give up hopes of selling the said property, but continued to negotiate during the entire month of October, 1906, with the said Ash, and finally brought the said negotiations to a successful close, and that on October 30, 1906, an act of sale was passed between said defendants and the said Ash, for the price of $525,000 for the portion of the property of the said Golden Ranch Sugar & Cattle Company, Limited, known as the “Der-bigny Plantation,” and for the cypress trees and timber on the remainder of the lands belonging to the said company.
Petitioners showed that it was entirely owing to their efforts and industry that the •purchaser of the said property was found for ■•the said property and at the said price, and that they were acting in the said transaction' under an express contract with the said Gheens, acting for himself and for the said Golden Ranch Sugar & Cattle Company, Limited, of which he was, and, as petitioners aver, still is, the president and manager, and has been for years; and petitioners aver that the said Gheens was also acting under due authority from the said company and from all the stockholders thereof, he, the said John R. Gheens, being largely interested therein, and holding a very great proportion of the stock of the said company, and being largely interested in the carrying out of the said sale, which petitioners aver was greatly to the advantage of the said stockholders therein.
Petitioners further showed that the agreement between the said Gheens and the said Golden Ranch Sugar & Cattle Company, Limited, was specific and definite: First, that all the holdings of the said company situated in the parish of Lafourche were to be sold for $650,000, or $600,000 to the defendants and $50,000 to petitioners; and that the subsequent and modified agreement made in place of the first was to the extent that if only a portion of the said holdings should be sold, then and in that event the commission to be paid petitioners was to be reduced so as to bear the same proportion to the purchase price as did the originally agreed upon commission of $50,000 bear to the originally required price of $650,000; that therefore the commission due to your petitioners is the sum of $40,384.61, that sum bearing the same *799 proportion to price paid by the said Ash to the Golden Ranch Sugar & Cattle Company, Limited, as did the originally agreed upon commission to the original price asked for all of the property.
Petitioners further show that at all times up to and including October 30, 1906, the date of the said sale, it was well understood and agreed between them and the said defendants as to their commission and what the amount should be, but that since the signing of the said act of. sale the said John R. Gheens and the said Golden Ranch Sugar & Cattle Company, Limited, have refused to pay petitioners the amount agreed upon and due to them, though rightfully and legally due to petitioners, as repeatedly admitted by the said defendants, who have repeatedly tentatively admitted the indebtedness and liability by offering a settlement based upon a sum smaller in amount than that called upon by the agreement between petitioners and the said defendants, but which suggestions of a decreased amount to be paid have been refused by your petitioners for the reason that their contract was clear and explicit.
Petitioners further aver that for a long time the property of the said Golden Ranch Sugar & Cattle Company, Limited, was listed by them for sale; that petitioners were earnest and diligent in their attempts to sell the same as requested by the defendants; that petitioners worked on it sedulously, giving it most, if not all, of their attention and energy for the space and term of more than 12 months; that, besides their valuable time and industry, they have devoted to the carrying out of the agreement a large amount of money, amounting to thousands of dollars, in order to accomplish the purposes of the contract and agreement above set forth, and that the action of the defendants in refusing to pay the commissions due, after having got rid of their property at a high price, lacks all the elements of good faith.
In view of the premises, petitioners prayed that the said Golden Ranch Sugar & Cattle Company, Limited, and the said John R. Gheens be cited to answer hereto; that after due delay and legal proceedings had petitioners have judgment against them, in solido, for the sum of $40,384.61, with legal interest thereon from October 30, 1906, till paid, and all costs of suit, and for all and general relief.
Respondents answered, pleading, first, the general issue. They then specially denied that defendant John R. Gheens personally, and for himself individually, ever had any dealings with plaintiffs or either of them relative to the sale of any property whatever, or that they or either of them ever acted for him individually touching the sale of property as brokers, or otherwise.
Respondents admit that on or about the 15th day of April, 1905, the Golden Ranch Sugar & Cattle Company, Limited, acting through its president, John R. Gheens, arranged with George W- Neal, acting, as he represented, for himself and William H. Junk, for them to sell all of its holdings situated in the parish of Lafourche for $650,000 cash, and agreed to pay them a commission of $50,000 if they effected a sale at the price stipulated and on the terms stated. Respondents aver that after much delay, trouble, and annoyance, as well as great expense incurred by your respondent the Golden Ranch Sugar & Cattle Company, Limited, and the advance of considerable sums of money to plaintiffs to enable them to consummate the sale of the said property, which they pretended and represented they could and would sell, the plaintiffs had your respondent the Golden Ranch Sugar & Cattle Company, Limited, to pass a sale to William H. Junk, of its property for $-, it being understood, however, that the deed was not to be placed of record until the cash stipulated in such deed was actually paid, the said Junk having no money, but claiming to be able to raise the same by a bond issue, which bonds he pre *801 tended to be able to sell in Chicago, and, pending such sale, the deed was placed in escrow with Howell & Martin, attorneys.
Respondents aver that after many months the plaintiffs informed them that it was impossible for them to raise the money, and the whole deal was declared off between your respondent the Golden Ranch Sugar & Cattle Company, Limited, and the plaintiffs. Respondents, further answering, say that, a short time after the failure of the plaintiffs to effect such sale, they requested your respondent the Golden Ranch Sugar & Cattle Company, Limited, to give them another trial and further time to make a sale of its property, which it reluctantly did, and to that end agreed that if they sold the property or any portion thereof for a price less than $650,000, but for a satisfactory price to the Golden Ranch Sugar & Cattle Company, Limited, upon terms satisfactory, your respondent company would pay to plaintiffs a commission in proportion to the first commission agreed to, to wit, “fifty thousand dollars.”
Respondents aver that the Golden Ranch Sugar & Cattle Company has waited patiently for a long time on the plaintiffs to effect a sale under the second arrangement, but they did nothing, and, finally, on the 7th day of August, 1906, your respondent the Golden Ranch Sugar & Cattle Company, Limited, through its president, John R. Gheens, effected an arrangement with Charles Ralph Ash and Edward E. Moberly, whereby the first-named agreed and promised in writing to buy a certain portion of the property of the said corporation for $525,000, upon certain terms and conditions as set forth in such written agreement, herewith filed and marked “Exhibit A”; and on the same day agreed with Edward E. Moberly in writing to sell to him all of the timber upon the lands described in said written agreement for the price and consideration fully set forth in the said contract, which said contract is filed herewith and marked “Exhibit B”; the said Ash and Moberly binding and obligating themselVes by the said agreements to buy the property and pay the price stipulated on or before the 1st day of October, 1906.
Tour respondents aver that plaintiffs contributed in no way, as far as they are aware, to the arrangement with Moberly and Ash; in fact, plaintiffs, as far as respondents are aware, figured in no manner in the deal, but in spite of this fact, and with the view of carrying out in good faith both in letter and in spirit its arrangement with the plaintiffs, and with a view of fully compensating them for any trouble or possible expense they may have incurred in behalf of your respondent corporation, the said corporation, acting through its president, John R. Gheens, was perfectly willing and would have paid them the full commission secondly promised them, believing at the time that they had been instrumental in putting respondent the Golden Ranch Sugar & Cattle Company, Limited, in touch with the said Ash and Moberly, but your respondents have been since informed, verily believe, and so aver that such was not the case, had such sales materialized, which, however, they failed to do, through no fault of your respondents.
Respondents, further answering, say that after the 1st day of October, 1906, all dealings between your respondents and plaintiffs ceased, and all efforts to sell property of the respondent corporation ceased and were discontinued by plaintiffs, nor were they authorized or intrusted further with the sale of the property of your respondent corporation or any part or portion thereof, nor did they any longer pretend to be authorized to sell or negotiate for the sale of the property of your respondent the Golden Ranch Sugar & Cattle Company, Limited’s, or part thereof, and from and after that date all relations between plaintiff and respondent the Golden *803 Ranch Sugar & Cattle -Company, Limited, relating to the sale or the offering for sale of its property, or any part or portion thereof, ceased; all employment to that end haying terminated on the 1st of October, 1906, when the contracts of sale to Moberly and Ash failed to materialize, and from and after that date plaintiffs had nothing more to do with the sale of the property of the Golden Ranch Sugar & Cattle Company, Limited, or any part or portion thereof, nor did they either offer or attempt to sell the same, or any part or portion thereof, nor did they pretend, claim, or hold themselves out to be authorized agents so to do until after the sale to C. R. Ash, by act before P. M. Milner, of date October 25, 1906.
Respondents, further answering, say that, a short time after the 1st day of October, 1906, the Golden Ranch Sugar & Cattle Company, Limited, acting through its president, John R. Gheens, undertook to sell its own property, and after considerable delay and negotiations did succeed in selling a large part of its holdings situated in the parish of Lafourche to Charles R. Ash, by act before P. M. Milner, notary public in and for the city of New Orleans, on the 25th of October, 1906, on the terms therein stated, for the price of $25,000; but your respondents specially deny that plaintiffs had anything whatever to do with the said sale, or contributed in any way to bring it about, or represented your respondents or were authorized to represent them therein, either directly or indirectly ; and respondents further specially deny that plaintiffs are entitled to any commission thereon or compensation whatever.
If, however, the court should hold that your respondents, or either of them, are indebted to 'the plaintiffs for the commission claimed by them, or any part or portion thereof, then your respondent corporation, the Golden Ranch Sugar & Cattle Company, Limited, alleges that it advanced to the said Junk and Neal, plaintiffs herein, on account of such commission as they might have earned if the first or second arrangement herein detailed had resulted in a sale, at various times, beginning with .the 6th of January, 1906, up to and inclusive of the 28th of July of the same year, $1,858.95, which respondent is entitled to recover in reconvention against the said plaintiffs, and so alternatively pray. Respondents aver that they are entitled to a trial by jury herein, and so pray, and herewith make the deposit required by law, and tender to the court their bond, with approved security, for such an amount as the court may fix.
In view of the premises, respondents pray that plaintiffs’ demand be rejected at their costs, or, if they are given judgment for any amount, that respondent the Golden Ranch Sugar & Cattle Company, Limited, do have and réeover judgment in reconvention against them in solido for $1,850.95, with 5 per cent, per annum interest from judicial demand until paid, for all costs, for trial by jury, and for all and general relief.
On May 4,1907, Charles R. Ash, with leave of court, intervened in the case. In his petition of intervention he alleged that this is a suit of plaintiffs against defendant upon an allegation that said plaintiffs have secured petitioner as a purchaser for the plantation formerly known as the “Derbigny and De Le Breton Plantation,” and plaintiffs are claiming a commission as brokers for said transaction.
Petitioner avers that he had no transaction with either of the plaintiffs in this case in reference to the purchase of said plantation; that a party by the name of John G. Taylor first approached petitioner and spoke to him about said plantation, and stated to him that plaintiffs had been endeavoring to effect the sale of said plantation, but their plans had fallen through and they had abandoned same, and he was induced to take the matter up with a view of securing a purchaser for same; that said Taylor knew that your peti *805 tioner was not financially able to buy a plantation and timber worth a half million dollars ; that said Taylor informed petitioner that he would divide his commission with him if he secured a purchaser.
Petitioner represents that he went to visit the plantation, and said Taylor arranged to have the plaintiffs accompany them to the plantation, and said Taylor introduced your petitioner -to Mr. Jno. R. Gheens, president ■of defendant company. Petitioner represents that, being unable to buy the plantation for himself, he was compelled to finance the deal, and he arranged with Mr. Edward E. Moberly, of Chicago, Ill., to purchase the timber which was to go with the sale, and on August 7, 1906, he and said E. E. Moberly entered into two written agreements of sale for the purchase of said plantation and the timber, the whole as will more fully appear by •said agreements marked “Exhibit A” and ■“Exhibit B” hereto annexed and made part hereof.
“Petitioner represents that said Golden Ranch Sugar & Cattle Company, Limited, through its president, Mr. Jno. R. Gheens, agreed to deliver abstracts of title to the property in question to his attorney for the purpose of examining the title thereto; that said abstracts were not delivered to his attorney within time to complete the examination, and on October 1, 1906, when their options to buy the plantation .and timber expired, they were unable to get An extension of time from said Jno. R. Gheens, president, and the deal fell through.
“Petitioner further represents that thereafter he undertook, without the assistance of either Taylor, Junk, or Neal, to again finance a deal by which he would be enabled to buy this plantation, and that he succeeded in so doing by making arrangements with the Hibernia Bank & Trust Company, of New Orleans, La.; that at the last minute the bank withdrew its .assistance, and the deal again fell through; ■that thereafter petitioner, again without the assistance or help of said Junk and Neal or said 'Taylor, was compelled to find new financial backing, which he was enabled to do, and on •October 30, 1906, with the assistance of the Commercial Germania Savings Bank & Trust Company of New Orleans, La., he acquired the .plantation in question and sold the timber, the whole as will appear by the notarial acts of sale of record in this parish.
“Now petitioner represents that no commission is due by said defendant to the plaintiffs in this case, and for the reasons aforesaid he. joins with said defendant in resisting their de-jnand, but petitioner and intervener avers that if said Taylor was acting ior Junk and Neal, and said Junk and Neal áre held in law to be entitled to a commission or brokerage for the sale of the plantation and timber in question, under the circumstances herein set forth, then and in that case petitioner claims and avers that he is entitled to one-half of such commission as they shall recover of the defendant herein, upon the ground that said Taylor,' in inducing petitioner and intervener to endeavor to sell said plantation and timber, agreed to divide the commission he would obtain with your petitioner.
“Petitioner avers that it was entirely through-his own extraordinary exertions and financial operations, with repeated failure, that he was enabled, by the sale of the timber on the property in question, to carry the deal and himself acquire the plantation, and that he received no assistance in this respect from either Junk, Neal, or Taylor, and that if said Junk and Neal can in law through his exertion establish a right to a commission on the sale of this land to him by and from the fact that Taylor presented the deal to him, then and in that case he is entitled to a division of the commission that these plaintiffs shall receive.
“In view of the premises, petitioner and in-tervener prays that this petition of intervention may be filed, that plaintiffs and defendant be cited to appear and answer herein, and that, after due proceedings had, petitioner’s demand be rejected, or, in the alternative, if petitioner’s demand is maintained, then and in that case that petitioner and intervener have judgment over and against said Wm. H. Junk and Geo. W. Neal for one-half of such amount as they may recover against defendant.
“And for all general and equitable relief.”
On May 7th, plaintiffs answered, the intervention of Ash, pleading first the general issue. They denied specially there was any privity existing between the intervener and plaintiffs, and especially that he is entitled to any relief as against any of the parties to this suit. In view of the premises, they pray that the intervention be rejected at costs of the intervener, and for all and general relief.
Defendants answered the intervention oí Ash, pleading first the general issue. They prayed that the demands of the intervener be rejected.
The case was tried before a jury, which returned a verdict in favor of the plaintiffs against the Golden Ranch Sugar & Cattle *807 Company, Limited, for the amount sued for, and a verdict for the defendants on recon-ventional demand for $250, and dismissed the intervention.
The plaintiffs had claimed a Judgment against Jno. R. Gheens, but the verdict was rendered merely against the company and judgment was rendered accordingly.
Defendant company appealed.
The issues between the parties are Shown by the statement of the case which accompanied this opinion.
The transcript consists of three large volumes containing a mass of irrelevant documentary and parol evidence which has no bearing upon the case, and has made it difficult for us to dispose of them. We have given the record careful consideration, but it is possible that some particular part bearing upon the case may have escaped our notice.
The plaintiffs, as we have seen, allege that on or about the 15th of April the defendant company entered into a definite agreement and contract with them, placing in their hands for sale its entire holdings in the parish of Lafourche for the price of $650,000, and that it authorized and directed them “to procure a purchaser,” and in case they should “procure a purchaser” for such a price it would pay them as a commission for effecting the said sale the sum of $50,000. Defendant admits that on or about the date mentioned it, through its president, arranged with the plaintiffs that they should “sell” all of its holdings for $650,000, and agreed to pay them a commission of $50,000 if they effected a sale at the price stipulated and in the terms stated.
In plaintiffs’ brief it is contended that the defendant has by its pleadings admitted the agreement which they set up as the basis of their demand, but it has not done so. Plaintiffs place their right to demand commissions, not upon the fact that under the original contract a “sale” of the property has been actually effectuated by them, but upon the fact that another and supplemental agreement was made to the effect that if they should “succeed in procuring a purchaser” for that portion of the property to which a perfect title could be made, and if the price should be satisfactory to the defendant’s president, then and in that event such a commission would be paid to them as would bear the same ratio as the price actually paid to and received by the defendant as the price originally agreed of $650,000.
Defendant denies that such a supplemental agreement was ever entered into between the parties. The evidence shows that the plaintiffs made several ineffectual attempts to procure a sale of the property of the defendant company under the terms of the' agreement of the 15th of April, 1905, and that the proposed selling of the entire holdings of the defendant company by the plaintiffs for the sum of $650,000 cash was never effected. The evidence shows that the plaintiffs continued to offer up to the 7th of August, 1907, the property for sale to different parties. That through the instrumentality of a Mr. Taylor the attention of one O. R. Ash was called to the subject of a sale by the defendant company of its property, and becoming interested in the matter, he, through Taylor, became introduced to the president Of the defendant company. That after several visits to the defendant’s property on La-fourche, accompanied by Mr. Neal and Mr. Taylor, whom plaintiffs (Junk and Neal) had associated with themselves in this matter, he returned to New Orleans and succeeded in causing a Mr. Moberly, who was desirous of making timber purchases in Louisiana, to join him in attempting to together make a purchase of part of the defendant’s property. The evidence shows that the plaintiffs had no connection with Moberly, and knew nothing of the plans or arrangements between him and Ash.
Ash and Moberly entered into negotiations with John R. Gheens, as the president of de *809 fendant company, with respect to a purchase by them of defendant’s property. These negotiations resulted in two agreements. The first is an act signed by defendant company through its president, on the 7th of August, 1907, wherein that company agrees to sell to Charles R. Ash the tract of land described in the act, together with the buildings and improvements, machinery, etc., referred to in the act for the sum of $525,000, whereof $225,000 shall be paid in cash, and the balance of $300,000 shall be represented by five notes, each for the sum of $60,000, bearing .5 per cent, interest from August 6, 1906, the first note payable on February 1, 1908, the remaining four notes to be payable the 1st .day of February, 1909, 1910,'1911, and 1912, respectively. The credit portion shall be secured by the usual clauses of mortgage and Insurance in an authentic act.
It was declared in this act to be understood and agreed that this sale is conditioned upon ■the carrying out of a certain agreement made the same day between John R. Gheens, as •president of the defendant company, and Edward E. Moberly, of Chicago, Ill., and if the ■said Edward E. Moberly, his successors and .assigns, fail to carry out said agreement, which was made part of the act then being signed, then this agreement of sale to Ash is to become null and void and inoperative. The parties agreed, in order to carry out the ■agreements that day signed, that on the day upon which the sales should be executed the •said John R. Gheens, president of the Golden Ranch Sugar & Cattle Company, Limited, shall first execute the deed to Edward E. Moberly, his successors or assigns, for the timber described in his agreement, for a cash consideration of $150-,000, subject to the credit of $10,000 that day paid; and that, immediately following the execution of said deed, the deed to said Charles R. Ash shall be made of the plantation property covered by the agreement then being signed, excluding and excepting, however, the timber sold Moberly; and that in view of the payment made to the Golden Ranch Sugar & Cattle Company, Limited, of the $150,000, the consideration of the sale to said Ash, his successors or assigns, shall be $375,000, of which $75,000 shall be in cash and the balance shall be represented by the aforesaid five promissory notes, each for the $60,000, bearing 5 per cent, interest per annum as before set forth, this making the total price received by the Golden Ranch Sugar & Cattle Company, Limited, for said plantation property described in the act, the sum of $525,000. It was agreed that this sale should take place not later than October 1,1906.
The second of the two acts agreed upon was one executed by the Golden Ranch Sugar & Cattle Company, Limited, through its president, wherein it was declared and recited that, for and in consideration of the sum of $10,000 cash in hand paid, said corporation agreed to sell, bargain, convey, and deliver to Edward E. Moberly certain described timber described in the act then executed on certain described lands.
It was declared in the act that it was agreed and understood that Edward E. Mo-berly should accept title by regular authentic act of sale, to be executed on or not later than October 1,1906, the said John R. Gheens binding himself and the company to make title to said Moberly to the described timber upon the described lands upon demand, and not later than October 1, 1906.
In the event that the said Edward E. Mo-berly, hi£ successors or assigns, fail to accept title to said timber on or before October 1, 1906, the $10,000 then paid should be forfeited to the Golden Ranch Sugar & Cattle Company, Limited, without recourse. In the event that the said Edward E. Moberly accepts title to the timber described, he shall pay, in addition to the $10,000 then paid, the sum of $140,000, which shall be the purchase *811 price for said timber as' described. In the event that Mpberly purchased said timber, the Golden Ranch Sugar & Cattle Company, Limited, will allow him, his successors or assigns, a right of way over and through the lands described for the purpose of logging same.
It was further agreed and understood that this agreement shall be null and void, and the $10,000 then paid should be forfeited, if Charles R. Ash fails to carry out his agreement that day made, a copy of which was annexed for reference, to buy the property firstly described in the act known as the Derbigny or Le Breton plantations, unless the said Edward E. Moberly shall find a purchaser in lieu of the said Ash upon the terms and conditions of the agreed sale to Ash.
On October 1st, the day fixed as the limit for carrying out the agreement to sell, the parties met at the office of Mr. Milner, the attorney of Mr. Moberly, when the latter demanded an extension of time, as he stated that he had not had time to examine the title.
Gheens refusing to grant the full extension asked and Moberly insisting upon it, the agreements were not carried out, and the property was not sold under them.
On the day the parties disagreed as stated, Gheens, as president of the company, wrote a letter to Moberly (and a like one to Ash), which was then served upon them, declaring that the company stood prepared to carry out that day in every particular the contract between the said company and himself on the 7th of August, and thereby formally tendered to him title to the property described in the contract, upon the terms and conditions therein stipulated, and offered to execute to him that day warranty deed to the said property under all the terms and conditions stipulated in the said contract before Andrew Hero, notary public, duly qualified in and for the city of New Orleans, or before such notary as he might select, at any hour that—
“may suit your convenience, and the said company formally calls on you to comply with the said contract. In default of your doing so., the. penalty fixed by the contract will be exacted.”
During the period of the negotiations between Ash and Moberly, the former, anticipating that the purchases which were contemplated by himself and Moberly might fail, had in anticipation of such failure placed himself in communication with the Bowie Lumber Company, of which Mr. Downman was president, with a view of getting that company (in that contingency) to act in conjunction) with him in dealing with the defendant corporation. Negotiations with it had taken no* definite shape, when what is termed herein the “Ash-Moberly deal” failed. Negotiations' were afterwards resumed, and resulted in what may be termed the “Ash-Downman deal,” whereby on the 25th of October, 1906,-the defendant first sold by authentic act to-Charles R. Ash the land belonging to that company described in that act, together with .the building and improvements, machinery,farming utensils, etc., therein described, for the price of $375,000, in part payment and deduction whereof the vendee was acknowledged to have paid the stun of $25,000, and for the balance of the price of $350,000 the-purchaser furnished his six promissory notes-to the order of himself, so indorsed and dated that day, payable at 90 days, for $40,000, and five notes, each for $62,000, payable respectively on February 1, 1908, 1909, 1910, 1911, and 1912, payable at the Commercial Ger-mania Trust & Savings Bank with interest at the rate of 5 per cent, per annum from date until paid; and whereby on the same day Charles R. Ash sold to Robert H. Down-man all the ties or timber of whatever kind on the same property for the price of $175,000-in cash payment, in deduction whereof it was acknowledged that purchaser had paid the sum of $12,500, and for the balance of the price the purchaser furnished his four promissory notes each for the sum of- $40,675, to his own order and by him indorsed, dated October 25, 1900, and payable in two, three, *813 or four years after date at tlie Commercial Germania Trust & Banking Company, to bear interest at tbe rate of 6 per cent, per annum from date payable semiannually.
Tbe evidence shows that, some few days after tbe Ash-Moberly deal failed, Asb, who was in New Orleans, telephoned to Mr. Gheens, in Lafourche, that he wished to see him in New Orleans. Gheens went to that city on the 10th of October and met Ash in the lobby of the St. Charles Hotel, and the latter saying to him:
“Colonel, if you will give me some more time, I think I can make a trade with you.”
The two repaired to Mr. Ash’s room and discussed certain propositions made by Ash. The negotiations between them then commenced continued from time to time until they culminated on or about the ,25th of October in the agreement which was consummated on the 25th of October. There is nothing going to show that Gheens anticipated when the Ash-Moberly deal fell through, that new negotiations would be resumed between Asb and himself, and nothing to cause us to question his utter good faith in' respect to the breaking up of that arrangement. We do not think that the plaintiffs had anything to do after the 1st of October with the later negotiations between Ash and Gheens.
It is proper to state here that the visits of Ash to the defendant’s property in company with Neal and Taylor were in view of his associating himself with Taylor and plaintiffs in seeking to bring about a sale of the whole of defendant’s property at the original price. Gheens knew nothing of the relations between the parties, or the purpose Ash had in view in going upon the plantation. Junk led him to believe that he was a prospective purchaser, and asked Gheens to handle him himself (Ash having expressed to Taylor an unwillingness to deal with Gheens through a broker). After informing himself of the situation of affairs, Ash became convinced that it was impossible to carry out the original plan of the defendant to sell all its holdings at the price of $650,000, and entered into direct negotiations with Gheens for a purchase by himself of its property in conjunction with Moberly. These negotiations culminated in the option to Mo-berly, conditioned upon the forfeit by him of $10,000 should he not avail himself of the option, and the contingent promise of sale by the defendant company to Ash and contingent promise of purchase by Ash, conditioned upon Moberly’s acceptance and execution of the option.
The proposed purchases to be made by Ash and Moberly fell through, as has been stated. After the breaking up of the Ash-Moberly deal, the latter threatened to sue the defendant for the return of the $10,000 which had been received by it, but the matter was compromised by the return of $5,000.
In the brief on behalf of the plaintiffs, counsel declare:
“Without fear of contradiction, throughout the periods we have been discussing, plaintiffs were proceeding under the original contract of brokerage on the basis of the whole of the defendant’s holdings for $650,000, and $50,000 commission, with the single modification perhaps, that the plaintiffs were no longer vested with the exclusive agency. The pext modification of this contract of brokerage occurred on the 27th of July, 1906.”
The modification in the contract referred to in the plaintiffs’ petition must be the modification claimed to have been made on the 27th of July. If there were any other, we have failed to find it. The testimony on that subject is found in Neal’s testimony, and that of Junk and Gheens. Neal was asked by counsel:
“Now, what was your agreement with Mr. Gheens in reference to commissions on July 27, 1906?
“We had quite a conversation on that date, and he said he did not think they were going to—
“Defendant’s counsel objects on the ground that there was no allegation on the petition fox-such pi-oof. We object unless it is the contract *815 •ho have admitted, otherwise proof cannot be admitted under the pleadings.
“By the Court: I think the evidence is admissible, and I overrule the objection.
“Counsel excepts, and reserves this note in lieu of a bill of exceptions.
“A, Mr. Gheens informed us at that time that he did not think Mr. Ash would buy the'entire property, so the question came up, and I asked, ‘Colonel, in that case, suppose he does not buy it, where do we stand in the matter?’ and he said, ‘Well, I propose to treat you right.’ I said, ‘What do you mean by “treating us right” ? Do you mean that you agree to prorate this commission in proportion to the number of acres and in regard to the amount of the sale with the commission on the whole?’ and he said ‘Yes, that is the agreement.’
“Q. You mean prorate in proportion to the price?
“A. Yes, sir; you see, before this there was nothing definite, but we had thought that Mr. Ash would purchase the entire property. Mr. Ash was the man that we had to take up the sale of this property with, immediately after the bond issue with Shadburne & Co. had fallen through, and up to this time we had been trying to convince him that it was a wise thing for him to buy all the property; and it was only after he had made a careful survey of the property, and had made the proposition, that this conversation came up about prorating.
“Q. Who told you he had made a proposition to Mr. Gheens?
“A. Mr. Gheens himself.
“Q. When did he tell you that?
“A. That night — the night of July 27th.
“Q. Now, with reference to Mr. Moberly, how long had he been figuring on this transaction prior to July 27th?
“A. That I can’t say. I did not know that Mr. Moberly was in the deal until July 10th, when Mr. Gheens showed me a telegram from Mr. Brayton that he and Mr. Gilchrist and Mr. Moberly would be ready.
“Q. "Who induced Mr. Moberly to go on the property?
“A. I suppose Mr. Ash did; we never knew anything about Moberly.
“Q. Who introduced Mr. Moberly to Mr. Gheens?
“A. That I cannot say.
“Q. Did you?
“A. No, sir, I did not.
“Q. Did Mr. Junk?
“A. Not that I know of.
“Ql Did Mr. Taylor?
“A. Not that I know of.
“Q. Did Mr. Gheens know when he made that agreement with you that you had no agreement with Mr. Moberly?
“A. I know I did not know anything about it. I don’t know how he could know; I knew nothing about it.
“Q. In so far as Mr. Gheens is concerned, did you ever tell or lead Mr. Gheens to believe by word or action that you had procured Mr. Mo-berly?
“A. None whatever in any way. _ We had nothing to do with Mr, Moberly — nothing at all.
“Q. Did Mr. Gheens ever say anything to you about Moberly’s connection with the deal?
“A. Not until the night of August 7th, I believe.”
Mr. Junk gave substantially the same testimony as to the conversation between Gheens and Neal as the latter gave.
In reference to this conversation, Gheens testified that he told Neal that 'if the sale went through (the Ash-Moberly sale) he supposed his company would have to settle with him pro rata to the amount of the commissions ; that Neal said: “Colonel, what about our commissions?” and he said:
“Well, Mr. Neal, I suppose we will have to prorate your commission if this deal goes through.”
On cross-examination plaintiffs’ counsel asked Mr. Gheens:
“Did I understand you to say that between the 1st day of May, 1906, and the 7th of August, 190G, Junk and Neal and neither of them had any authority whatever to negotiate the sale of your property? * * *
“A. I said after that 1st of October.
“Q. They had authority between the 1st day of May and the 7th day of August, 1900?
“A. I can’t deny that.
* * * * * s¡« *
“Q. And up to the 1st of October did they not have authority up to the Moberly deal?
“A. Yes, sir.
“Q. They did have authority?
“A. Yes, sir.
“Q. And they were entitled, if they had made a sale, to prorate part of the commission?
“A. I said that I made that statement a while ago.”
Defendant’s contention as to this is that this conversation constituted no contract or agreement, that it was a mere promise, and that promise was one made in reference to the Ash-Moberly deal which was at that time apparently about to be consummated; that the promise was made upon the belief that he then entertained, which belief was not founded on facts, that plaintiffs had been connected with Moberly and contributed to his entering into the arrangements with Ash.
*817 Plaintiffs’ contention is that the brokerage contract, either in its original or as finally' amended on July 27, 1906, did not provide or contemplate that these plaintiffs were to secure their commissions only in the event that the special agreements entered into •with the two particular individuals, Ash and Moberly, should be carried into actual and final effect by formal transfer of the property. They contend that they were entitled to their commission if the vendee presented by them entered into a valid, binding, and enforceable contract; that, if, after the making of such a contract, even though execu-tory in form, the purchaser declined to complete the sale and seller refuses to compel performance, the broker was entitled to his brokerage; that the broker was also entitled to his commissions when he produced a customer who was able, ready, and willing to purchase on the terms proposed, and enter into a valid, binding, and enforceable contract to that effect, even though the owner declined the offer, or if at the owner’s solicitation the contract of purchase entered into was designedly so framed as to be specifically nonenforceable.
They contend that they produced in this instance to the defendant a purchaser able, willing, and ready to enter into a valid, binding, and enforceable contract on the terms proposed by the owner; that the parties did enter into such a contract; that it was enforceable, and defendant failed to enforce it when Moberly withdrew from it, as it could and should have been done; and that they at once earned the commission when this occurred; that if this were not true, they earned their commission when later the purchaser whom they had produced entered into a contract of sale with the owner.
There is another circumstance in the case which has been omitted from mention so far upon which plaintiffs lay some stress. They urge that, since the sale made to Ash, defendant has repeatedly, “tentatively admitted” the indebtedness claimed by them by offering settlement upon a sum smaller in amount than that called for by the agreement
Opinion.
Plaintiffs sue upon a “contract” alleged to have been made between themselves and the defendant company on the 27th day of July, 1906. That contract has not been established. Plaintiffs refer to it as a modification of the original contract between the parties, but it is so radically different from that one as to constitute it a “new” contract, rather than a modification. The contract sued upon is a verbal one, involving in it thousands of dollars, and rests upon conflicting evidence. We are satisfied of the correctness of Mr. Gheens’ version of the conversation between the parties on the 27th of July, 1897. That of the plaintiffs is highly unreasonable and improbable. The plaintiffs claim, and the defendant does not deny, that the former were, up to that conversation, acting under the terms of the original agreement, which was not “to procure a purchaser for a portion of the property and On uncertain terms,” but to effect themselves a sale of the entire holdings of the defendant company, and for the fixed sum of $600,000, and fixing the commissions at $50,000 if that sale was effectuated by themselves. Plaintiffs admit that they knew nothing of the negotiations which had taken place between Ash and the defendant company until they were told of them by Gheens on the 27th of July, and that they had nothing to do with Moberly at that or at any other date with those negotiations. It is perfectly clear what the result of the failure of the consummation of those negotiations would have been upon the right of the plaintiffs to commissions. Matters standing admittedly at that time on the basis of the original contract, there was no possible doubt as to what plaintiffs’ position was as to what their right to commissions would be under *819 such conditions. It was a useless and senseless question for Neal to ask Gheens what their rights would be had the negotiations failed. On the other hand, plaintiffs, ascertaining at that time that Ash and Moberly had come to a definite arrangement as to a sale of part of defendant’s property, on terms entirely different from those fixed in the agreement of the 15th of April, and recognizing, as Neal himself testified to, that nothing had been said as to what their status would be under this new state of facts, very naturally inquired of Gheens what their status would be as to commission in the event of the existing arrangement being carried through, and it was perfectly natural that Gheens should have been willing to say what he would do if in point of fact they should he carried out, and declare that should that arrangement be carried out he would pay them commissions pro rata. The question was evidently directed to the conditions which would arise in the event the proposed purchase by Ash and Moberly went through, and not to what would be the result of the failure of those negotiations. Gheens evidently answered the questions from the standpoint of a successful carrying out of the particular plan which had been reached between Ash and Moberly and defendant. It is unreasonable to believe that Gheens should under existing conditions have consented to make an arrangement with plaintiffs which would cut him off from making new and independent arrangements with Ash and Moberly, without such new and independent arrangements carrying with them as a necessary legal result the payment to plaintiffs of the large pro rata commissions which plaintiffs claim they would be entitled to from the successful accomplishment by themselves of a sale of the whole property of the defendant for the fixed price of $650,000.
Plaintiffs’ claim that the negotiations between Ash and Moberly and the defendant company were an accepted promise of sale, which admitted of a successful suit against Moberly for a specific performance of the agreement by him, is without fqrce. Moberly never came under an obligation to purchase the property, go far from this, he exercised the greatest care and caution to avoid any liability beyond that which he consented to-come under if he did not consent to buy. The defendant could not force him to buy; the utmost it could exact was to claim the $10,000 forfeit. Ash never came under an obligation to buy; everything consented to by Ash was contingent upon Moberly’s making the purchase which he contemplated making, Ash recognizes his financial inability to make his contemplated purchase independently of the co-operation of Moberly.
Obviously, the defendant would not have entertained any proposition made by Ash to purchase, disconnected with Moberly’s cooperation. When Moberly withdrew, the whole plan of purchase collapsed, and the relations between the parties in respect to that purchase ceased. All parties were finally released from obligations.
The defendant had no reason to know or to suspect that Ash would make a new and independent proposition to buy based upon the co-operation with him of Downman. The good faith of the defendant in this matter is beyond question. The defendant had the legal right to entertain this new and independent proposition from Ash and Downman freed from any liability to plaintiffs for commission. They had no connection whatever with the ultimate purchases made by Ash and Downman. The negotiations which led to that purchase were made by Ash and Moberly without consultation with the plaintiffs.
We do not find in the willingness of the defendant to pay the plaintiffs any tentative admission” by the defendant of any obligation on its part. The defendant specially denied the existence of an obligation towards the plaintiffs, and placed its willingness to *821 pay the sum to good feeling towards them and to a recognition of the fact that they had given a good deal of their time and had expended a good deal of money in attempting to bring about a sale under the contract of 15th of April, 1905. What was intended as a favor is now construed into an acknowledgment of a right.
We are not dealing in this case with any right to remuneration for services rendered upon a quantum meruit, but with a claim to remuneration brought forward upon a contract which we do not think has been established.
For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the verdict of the jury, and the judgment of the court therein, herein appealed from, be, and the same are hereby, set aside, avoided, and reversed, and that plaintiffs’ demand herein be, and the same is hereby, rejected, and its suit dismissed.