## MATHEWS v. CACIOPPO.
### No. 16553.

Court of Appeal of Louisiana. Orleans.

Feb. 23, 1937.

Deutsch & Kerrigan & Burke and David Gertler, all of New Orleans, for appellant.

Frank J. Stich, of New Orleans, for appellee.

WESTERFIELD, Judge.

This is a suit by a real estate agent for a commission. There was judgment dismissing plaintiff's suit and he has appealed.

Joseph Cacioppo was the owner of a piece of real estate in the city of New Orleans known as 2600 N. Tonti street. He desired to sell this property and for that purpose engaged the plaintiff, Benjamin B. Mathews, a real estate agent. Mathews, through his salesman, Emile E. Fucich, succeeded in interesting Anthorny Monica, Jr., in the property but was unable to obtain a forthright offer to purchase it. After considerable negotiations, Monica agreed to rent the place with an option to buy it, and, accordingly, there was prepared on a printed form an offer addressed to Mathews Bros., apparently the predecessor of Benjamin B. Mathews, by the terms of which Anthony Monica, Jr., leased defendant's place for a period of six months or from April 1, 1935, through October 31, 1935, for a monthly rental of $35 coupled with an option to purchase the property "for $4,000.00 at any time during the period of this lease." The offer was duly signed by Monica and, strangely enough, by Cacioppo, who should have signed the following printed form appearing below the signature of Monica:

"New Orleans, La. ———— 193——
"Mathews Bros, Agent,

———— authorize the acceptance of the above offer and agree to pay you a cash commission on the gross rent of the lease, of ———— and a similar commission on any extension or renewal; also a commission of 4% on any agreement to sell or exchange made with or through lessee. As agents you are authorized, with full power of substitution, to sign lease.

"————————"

We say he should have signed this form because it is obviously intended for the signature of an owner who accepts an offer to buy or rent his property. There was certainly no reason for the owner of the property to sign an offer to rent it. On the back of the printed form there appears a formal contract of lease which adds nothing to the original contract except more details. This agreement on the reverse is dated April 8, 1935, whereas the offer, signed by lessor and lessee, is dated March 26, 1935. There was also another instrument on a printed form dated February 5, 1935, in which Benjamin B. Mathews is authorized to lease Cacioppo's property and endeavor to sell it for $4,300 in which event he was to receive a commission "at the regular rate of ————%, on the gross amount of any agreement to sell or exchange bearing on said property (minimum commission to be $————) made during the existence of this contract, or on the gross amount of any such agreement made within forty-five days after the expiration or termination of this contract, with anyone to whom said property had been quoted during the term of this contract." Though all three documents bear different dates the evidence is to the effect that all of them were signed on the same day.

Monica remained in the property as lessee for the six months' term of his lease without exercising his option to buy the property though he was actively solicited by plaintiff's employee Fucich to do so. About three months after the lease had expired or on January 31, 1936, he did buy the property upon the same terms set forth in his option connected with his original offer to rent the property. This offer which, as we have said, was signed by both the offerer and the offeree was in triplicate, one copy being retained by Mathews, another by Monica and the third by Cacioppo. The copy which was retained by Mathews contained the typewritten words "see reverse hereof which is also a part of this agreement" and also the word "I" before the word "authorize" in the printed portion intended to be signed by the offeree, as well as the words below the printed form also in typewriting "all of the above agreement is part of the agreement on reverse hereof." The other two copies do not contain these additions and the testimony of plaintiff is to the effect that it was the result of an oversight whereas according to the evidence of defendant the words were added by Mathews after the agreement had been consummated. We do not consider this feature of the case of much importance since the intention of the parties relative to the commission claimed by plaintiff is fairly evident from the testimony without determining whether the typewritten words in the addenda form part of the contract. It is clearly evident from the testimony of the defendant himself that he understood that he would be obliged to pay to the plaintiff a commission on the sale of the property if made to Monica during the term of his lease. He has said so in so many words and has admitted that all during that time plaintiff's employee was endeavoring to persuade Monica to exercise his option to purchase. Monica confirms plaintiff's employee Fucich, so that we

586

conclude from the written agreements between the parties, as explained by the verbal testimony, that plaintiff is correct in his contention that he was to receive a commission upon the sale of the property to Monica. The real difficulty in the case arises from the fact that the sale was not consummated by plaintiff or his agent within the term of the lease or of the listing contract, but some three months later and no provision of any of the three written agreements, as supplemented by the oral understanding, obligated the defendant to pay a commission to plaintiff on the sale of the property to Monica or anybody else after the expiration of the lease.

Monica bought the property on January 31, 1936. His lease expired on October 31, 1935, or three months earlier. Monica testified that he had definitely given up the idea of purchasing the property and had subsequently purchased it as a result of new and independent negotiations with Cacioppo. The fact that he allowed his option to expire is corroborative of his testimony. Moreover there is no evidence of collusion between Monica and Cacioppo for the purpose of postponing the consummation of the sale beyond the period during which defendant was obligated to pay Mathews a commission. The mere fact that the sale was made to a prospect obtained by Mathews is not sufficient to entitle him to a commission on a sale effected by defendant after the expiration of the time limit in his contract in the absence of any showing of collusion or that plaintiff's efforts were the procuring cause of the sale.

In Wittenberg v. McGrath, 3 La.App. 244, 247, this court held that a real estate agent was not entitled to a commission on a sale of property to a prospect secured by him six months after the expiration of his contract, because the efforts of the agent were not the procuring cause. In the opinion in that case we said:

"The broker has not a vested interest in any sale that the owner may thereafter make to a man whom he introduced as a prospective purchaser. Ford v. Shaffer, 143 La. [635] 636, 79 So. 172.

"In order to be entitled to a commission the broker must have ultimately been the procuring cause of the sale. Ford v. Shaffer, 143 La. [635] 636, 79 So. 172; Taylor v. Jay, 119 La. 163, 43 So. 993; Taylor v. Martin, 109 La. 137, 33 So. 112; Tessier Dig. p. 31, 15—Nos. 7797, 7901, Ct.App."

The following from Junk v. Golden Ranch Sugar & Cattle Co., 122 La. 794, 48 So. 267, is quoted in our opinion: "If a broker attempts unsuccessfully to effect a sale of land or his proposed purchaser abandons the idea of buying, but he is afterwards induced to do so by the principal or by another person, without being in any way influenced by the broker, the latter is not entitled to any commission." See, also, other authorities cited in the opinion.

Our conclusion is that the plaintiff was not the procuring cause of the sale to Monica and that, therefore, he is not entitled to his commission.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.