George J.A. Seymour, who conducts his business under the trade name, Seymour and Company, alleges that Richard J. Franek is indebted to him in the sum of $700 as the result of services rendered under a written contract by which Franek agreed to pay a commission of 4 per cent. on a loan which Seymour undertook to secure for him on certain real estate owned by Franek in the city of New Orleans. Franek admits that he entered into the contract with Seymour, and that he, Franek, has obtained a loan of $17,500 on his property, but he denies that Seymour was instrumental in securing the said loan, and he maintains that it was obtained by him by direct negotiations with another brokerage firm, after Seymour had failed in his efforts to find a lender who would make the loan.
There was judgment for defendant and plaintiff has appealed.
On October 13th, 1936, by written contract, Franek authorized Seymour to secure a loan of $16,000 at 5 1/2 per cent. interest on certain property owned by Franek, near the French Market. He agreed to pay a commission of 4 per cent., and he further assigned to Seymour "out of the proceeds of the loan, the sum of 4 per cent. of the loan." No time limit within which the loan was to be obtained was set forth, nor was there any provision that Seymour should have the exclusive right to negotiate for a loan for Franek.
On January 25th, 1939, Franek, through another firm of brokers, Dane and Weil, borrowed from the Prudential Life Insurance Company, $17,500 and secured the loan by mortgage on the same property which was described in the contract which had been made with Seymour on October 13th, 1938. It is Seymour's contention that he was responsible for the placing of the loan with the Prudential Company, while Franek asserts that Seymour had no influence whatever and had been in no way responsible for the consummation of that transaction. *Page 395 
Franek testified that he made the contract with Seymour because the latter told him that he had a client who was ready and willing to make the loan required by Franek, and that Seymour had said: "I can get it in ten days." Seymour admitted that he had told Franek that he had a "prospective party who was to make the loan", and he stated that, as a matter of fact, he did actually have such a commitment from Mr. Newman, who at that time represented Dane and Weil, who ultimately were instrumental in securing the loan from the Prudential Life Insurance Company. But unfortunately for Seymour, Mr. Newman testified that no such commitment had been made.
The record shows that the loan was not obtained at that time and Franek testified that, about forty days later, Seymour told him that he could not obtain the loan, and that later he, Franek, had gone back to Dane and Weil, with which firm he had had business relations prior to the Seymour episode, and that he had discussed with them the possibility of obtaining the necessary loan.
The lease on the property which had been offered as security had almost expired, and the brokers suggested that if a new lease for a long term could be arranged, the required loan might be available. Accordingly negotiations were commenced with the tenant which had occupied the property for sometime, and a new long term lease was entered into. Thereafter the Life Insurance Company agreed to make the loan.
The president of the lessee corporation testified that he had no recollection that Seymour had played any part at all in the lease negotiations, and the representatives of Dane and Weil stated positively that Seymour had had nothing at all to do with that transaction. Franek so testified also.
A broker is entitled to his stipulated commission when he has produced a lender, able, ready and willing to lend on the borrower's terms, and of course a borrower cannot, by delaying the consummation of the transaction, avoid his liability for the commission. But here the record shows that the broker did not produce a borrower, but on the contrary failed to do so, and stated that he could not do so. As a matter of fact, no loan at all could be obtained until others had done considerable work to enhance the value of the borrower's security.
Furthermore, it seems rather clear that the moving inducement which had lead Franek to employ Seymour was the latter's statement that he had already obtained a lender willing to make the loan on the terms offered by the borrower, whereas he had obtained no such agreement from any prospective lender.
When a broker is employed to obtain a loan and the parties know that he has no commitment but must use his efforts to find a lender, the broker is entitled to a reasonable time within which he may attempt to find such a lender. But when by a statement that he already has a commitment from a prospective lender, he prevails upon a prospective borrower to employ him and to agree to pay him a commission, the broker cannot be heard to complain, if upon his own failure to produce the lender, the borrower ignores him and attempts directly to negotiate the needed loan.
Counsel for plaintiff cites several decisions, in each of which it is recognized that when a principal has consummated a "sale with a purchaser procured by the broker, he is liable for his commission, although the owner sold for a price smaller than the one originally fixed in his contract with the broker."
In those cases it is also recognized that, "If the owner continues the negotiations with the prospective buyer uninterruptedly after the expiration of the time fixed, and, within a few days thereafter, sells the property to the purchaser procured by the agent, he will owe the agent his commission." Harvey v. Winters, 1 La.App. 383.
But we think that the facts here are much more similar to those found in Lewis v. Manson, 132 La. 817, 61 So. 835, in which, in a syllabus written by the court, it is said that, "If a broker attempts unsuccessfully to effect a sale of land, and his proposed purchaser abandons the idea of buying, but he is afterwards induced to do so by the principal or by another person, without being in any way influenced by the broker, the latter is not entitled to any commission."
In the syllabus of that case also appears the following: "Where a broker has had a reasonable time in which to effect a sale, and he fails to do so, the principal *Page 396 
may take negotiations out of his hands and complete them himself; and the fact that the sale was made to a customer represented by the broker, and that the sale was in some degree aided by the previous unsuccessful efforts of the broker, does not give the broker a right to a commission. 4 Am. Eng.Ency. of Law, pp. 978, 979; Taylor v. Martin, 109 La. 137, 33 So. 112; Taylor v. Jay, 119 La. 163, 43 So. 993; Junk v. Golden Ranch Co.,122 La. 794, 48 So. 267."
From the record there is no doubt that Seymour had nothing to do with the second negotiations conducted through Dane and Weil, and the fact that he had first offered them the loan for the Prudential Life Insurance Company, played no part in the ultimate consummation of the transaction. The principle recognized in Lewis v. Manson, and in other cases cited therein, is particularly applicable where, as here, the broker obtained his contract by the erroneous statement that he had already obtained a prospective purchaser or a prospective lender, where it is the loan of money which his principal desires.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed. *Page 553