MARVIN, Judge.
In this action on a promissory note given to a mortgage broker as a commission for procuring a loan commitment for the defendant-maker, the broker appeals a judgment rejecting its demands.
The record supports the conclusion that the commission was not “earned” in the sense that the note was executed without “cause” or consideration. See Seymour v. Franek, 5 So.2d 394 (La. App. Orl. 1942); LRS 10:3-408, La. C.C. Arts. 1893, 1896-1900.
Even should we agree arguendo that a promise to pay still presumes a cause or consideration, this presumption, when recognized, has not been held to be conclusive or irrebuttable. Fontenot v. Estate of Vidrine, 401 So.2d 584 (La. App. 3d Cir. 1981). The issue in this appeal is whether the broker “earned” its commission by producing a lender able, ready, and willing to lend on the borrower’s terms. Seymour, supra; Avery v. Helwick, 166 So. 507 (La. App. Orl. 1936).
FACTS
On October 31, 1979, the defendant Bart-mess, a domiciliary of Franklin Parish, contracted with Bayou Lafourche, Inc., to buy approximately 4,700 acres of farmland in Avoyelles Parish which Bayou agreed to sell for almost $4.4 million cash, with the final $3.8 million of the purchase price being payable on or before December 4, 1980. Under the terms of that contract, Bartmess paid $550,000 in four periodical cash payments in 1979 to keep the buy and sell agreement in force and avoid forfeiture of payments made to Bayou,
Bayou had borrowed $11 million from Northwestern Mutual Life Insurance Company earlier in 1979 and this indebtedness was secured by a mortgage on almost 20,000 acres of Bayou lands and by the personal guarantee of Albert Prevot, sole stockholder of Bayou, who negotiated the buy and sell contract on Bayou’s behalf with Bart-mess. The 20,000 acres included the 4,700 acres in the Bartmess-Bayou contract. In his testimony in this action, Bartmess explained that he first sought to obtain financing for the final $3.8 million payment from Connecticut Mutual [Insurance Company] but that these negotiations were unsuccessful because that company would lend the money only through Prevot, with Pre-vot also being liable for the indebtedness to Connecticut, a proposal to which Prevot would not agree.
Shortly after executing the buy and sell agreement, Bartmess agreed with Mid-South Mortgage, Inc., the plaintiff in this action, to pay a $60,000 commission if Mid- *91 South succeeded in obtaining a loan commitment for Bartmess.
On behalf of Bartmess, Mid-South contacted Northwestern, the company which had made the $11 million loan to Bayou. After some negotiation, Mid-South obtained this letter agreement dated August 12, 1980, from Northwestern which in effect would allow Bartmess to assume the Bayou Lafourche, Inc. existing mortgage:
“Northwestern ... has agreed to the following modifications to our loan [with Bayou Lafourche, Inc.] provided the loan is current:
“1. Release all of our security except 3,024 acres under contract to George Bartmess.
“2. Consent to the sale of our remaining security (3,024 acres) to George Bart-mess.
“3. Reduce our loan to $2,100,000.
“4. Obtain the liability of George Bart-mess.
“5. Retain the liability of Albert Prevot.
“6. Increase the interest rate on the loan to 11% effective October 1, 1980.
“7. Decrease required principal and interest payments to $249,360 beginning June 1, 1982.
“8. Change the maturity date of the loan to January 1, 1992.” [1]
Mid-South then represented to Bartmess that it had obtained a commitment for a loan of $2.1 million at 11 percent per annum interest payable in annual installments of almost $250,000. This correspondence, bearing the date of August 12, 1980, eventually was delivered to Bartmess:
“This letter is to confirm the fact that Mid-South ... has earned a fee in the amount of $60,000 for arranging a loan in the amount of $2,100,000 for you on your 3,045 acres in Avoyelles Parish, Louisiana. This loan is at 11% interest with annual payments of $249,360 beginning January 1, 1982. This loan will be due and payable at the end of the tenth year at which time we will renegotiate the rate on this loan or take a free payoff.
“Please sign the original of this letter and return to Mid-South Mortgage Company and keep the copy for your files.... ”
On the strength of these representations, Bartmess executed the promissory note for $60,000, dated August 12, 1980, upon which this action was instituted.[2] Mid-South did not inform Bartmess of the “modifications” or conditions connected with the Northwestern “commitment” or that the “loan” was to be an assumption of the Bayou mortgage, with the retention of the personal guarantee of Prevot. It is not shown that Mid-South attempted to obtain either Prevot’s assent to continuing his personal guarantee or Bayou’s assent to change the buy and sell agreement from a cash transaction to an assumption.
Under these circumstances, Mid-South did not provide Bartmess with a lender able, ready, and willing to lend on the borrower’s terms and there was a failure or absence of cause or consideration. We find no abuse of discretion by the trial court in its assessment of credibility issues when confronted with conflicting testimony.
For reasons detailed by the trial court and summarized here, and at appellant’s cost, judgment is
AFFIRMED.

. The letter was addressed to Mid-South.
Bayou was apparently negotiating with others during this time for the sale of other acreage. This record shows that Larry Matthew Gregory paid or obligated himself to pay Bayou over $5 million on September 11, 1980, for lands which included the 4,700 acres which Bayou had agreed to sell to Bartmess. Gregory bought “subject to” the Bayou-Bartmess buy and sell agreement and acquired the rights of Bayou under that agreement.
Bartmess eventually obtained a loan from the Federal Land Bank and on October 28, 1980, Bartmess paid the final installment of $3.8 million on the Bayou contract. This money was paid to Gregory in a cash deed and Gregory deeded 4,709.03 acres to Bartmess.

. This note was “immediately payable” at the “closing of Bayou Lafourche/Bartmess contract prior to 1/1/81.”
When the note and the Mid-South letter were delivered to and were signed by Bartmess, is not important, in our opinion. Bartmess received this letter before the Federal Land Bank loan was closed on October 28, 1980.