(76 South. 580)

No. 21593.

PATTON et ux. v. FROST–JOHNSON LUM-
BER CO.

(June 30, 1917.    Rehearing Denied Oct. 29,
1917.)

*(Syllabus by Editorial Staff.)*

1. RAILROADS ☞387 — FRIGHTENING ANI-
MALS — CONTRIBUTORY NEGLIGENCE — PROX-
IMATE CAUSE.

Plaintiff left his team of mules standing
at the front of a building extending back to a
railroad right of way while he was in the build-
ing, there being no one in his wagon except his
wife with a baby in her arms.   There was evi-
dence that he left a man at the animals' heads,
but it appeared that after an engine stopped
back of the building and the engineer left it,
the man did not stay at their heads, but the
mules were quiet, and there were several men
near by, and there was nothing to show that if
the engineer had been seen returning to the lo-
comotive or the engine about to move the man
would not have resumed his position in time to
hold the mules.   They were, however, frighten-
ed by a sudden and extraordinary escape of
steam, causing them to run away.   *Held*, that
this, and not the leaving of the mules unat-
tended or their supposed disposition to run
away, was the proximate and juridical cause of
the accident.

2. RAILROADS ☞360(2) — FRIGHTENING ANI-
MALS—LEAVING ENGINE NEAR HIGHWAY.

It was negligence to leave a railroad en-
gine within a few feet of a street where many
teams were going and coming, though the engi-
neer before leaving the engine claimed to have
taken precautions against an explosion of steam.

3. EVIDENCE ☞265(14) — ADMISSIONS—CON-
CLUSIVENESS.

That the father of a child killed when his
team of mules was frightened by a sudden es-
cape of steam from a railroad engine stated at
the time that he blamed himself, and not the
railroad company, did not defeat a recovery
where he failed to make a distinction between
noises caused by the ordinary operation of the
locomotive and noise of the kind which fright-
ened the animals.

4. DEATH ☞99(3) — AMOUNT OF DAMAGES—
DEATH OF CHILD.

Three thousand dollars claimed by the par-
ents for the death of a child about 18 months
old would be entirely reasonable.

Appeal from Twelfth Judicial District
Court, Parish of De Soto; John H. Boone,
Judge.

Action by R. B. Patton and wife against
the Frost-Johnson Lumber Company to re-
cover for the death of a child about 18 months
old.   From a judgment for defendant, plain-
tiffs appeal.   Judgment set aside, and judg-
ment rendered for plaintiffs.

Parsons & Cook and Frank S. Craig, all of
Mansfield, and Dashiell & Coon, for appel-
lants. Elam & Lee, of Mansfield, for appel-
lee.

PROVOSTY, J.   The startling noise pro-
duced by a sudden escape of steam from the
safety valve of a locomotive of the defendant
railroad company frightened a pair of mules
hitched to a wagon in which were the wife
and child of plaintiff, causing the animals
to run away and spill the occupants of the
wagon, killing the child instantly; and plain-
tiff sues in damages for the death of the
child.

Lumberton, where this accident occurred,
was a logging camp which had recently be-
come a place of considerable population as
the effect of an excitement incident to the
discovery of oil in the neighborhood.   And,
in like manner, the railroad of defendant
was a logging road, which the need of trans-
portation facilities incident to the same dis-
covery of oil had recently converted into a
commercial road.   It reached to this logging
camp out of Mansfield.

When a locomotive on defendant's railroad
in entering Lumberton going due northeast
reaches Lumberton avenue, which runs due
east and west, the engineer has at his left the
ice warehouse of Lawrence & Gardner, which
is situated in the angle between the avenue
and the railroad, south of the avenue and
northwest of the railroad, facing the avenue
and partly on it, and extending back on the
right of way of the railroad.   That day, which
was a Sunday, at about 3 in the afternoon,
the locomotive, after having left the coaches
at the station on the north side of the avenue,
and done some switching, had come and

stopped south of the avenue, within a few feet of it, and just back of this ice warehouse of Lawrence & Gardner. The engineer had gotten off the engine and had been away from it a few minutes, five minutes or more, when the escape of steam in question occurred.

Plaintiff was the person in charge of the ice warehouse, but, the day being Sunday, he was off duty, and had come to Lumberton with his wife and child merely to witness the spectacle of the arrival of the train. However, to accommodate some customers who wanted ice, he went to the warehouse, backed his wagon to the front gallery, left his wife and child in it, and opened, and went into, the warehouse. He was engaged in doing this when the escape of steam and the runaway occurred. How long he had then been away from the team the evidence does not show.

Plaintiff contends that the noise produced by the said sudden escape of steam, the popping of the valve, was of a nature to frighten any horse or mule, however gentle and safe, and that leaving to itself so near the avenue, where teams were constantly passing, this locomotive which might at any moment break out into this dangerous noise, was negligence on the part of the defendant company.

Defendant contends that before leaving the locomotive the engineer took the proper precaution against this noise occurring, and hence that there was no negligence; but that if there was negligence still plaintiff cannot recover, because he contributed to the accident by leaving his mules unattended, save for his wife in the wagon with a baby in her arms, although he knew the animals were young, spirited, and wild and skittish, and, in fact, habitual runaways.

Plaintiff does not admit that the animals were thus dangerous, and does not admit that the proper precautions were taken to avoid such an escape of steam, and contends that his leaving his team was to be for only a few moments, and the locomotive was then far away, and that he took the precaution of putting a man at the heads of the animals to hold them in case of necessity.

The evidence shows that the mules were young and mettlesome, and had previously run away, once when together and on another occasion separately, and that plaintiff was so aware; but that they were not so wild or easily frightened as defendant makes out, since they were being used evey day, and had that very day, a few moments before this accident, stood unfrightened 15 or 20 feet of this same locomotive when it had traversed this same avenue with the passenger coaches on its way to the station; and that on the occasion when they had run away together it had been from a blowing out of the pipe of a gas well, which had frightened every horse or mule in the vicinity, young and old.

On the question of whether plaintiff put a man at the head of the team there is on one side the positive testimony of plaintiff and of his wife and two other witnesses; and there is on the other side the testimony of other witnesses that they saw the team standing and no one at their heads. One of the latter witnesses says that there were two men on the ground by the side of the wagon, one opposite the front wheel, and the other back of it. Another of the latter witnesses says that just before the accident he was on horseback at the wagon talking to Mrs. Patton and playing with the baby; that he saw no one standing in front of the mules, but that the engine was then standing still, and that there might have been some one in front of the mules before he rode up.

The testimony may be reconciled by supposing that the person whom plaintiff put at the heads of the mules deemed it no longer necessary to stay there after the locomotive had come to a final stop, but only necessary to be near the wagon.

Our learned Brother below, who tried the case without a jury and found against plain-

tiff, gave no reasons for his judgment. We apprehend he attached more importance than we do to the supposed runaway disposition of the mules and to their having been unattended.

[1] The gentleman who stood on horseback near the wagon conversing with Mrs. Patton and playing with the baby cannot have looked upon the situation as fraught with danger as otherwise he would not have ridden off, we assume, and left the lady and the child in this danger. The mules were quiet, and several men were near them, although not exactly at their heads. There is absolutely nothing to show that had the engineer been seen to go back to his locomotive or the machine to be about to move, the man assigned by plaintiff to the duty of standing at their heads would not have resumed that station in time. The accident must therefore be attributed to the extraordinary character of the noise produced by the locomotive, to its suddenness and its unexpectedness. This was the proximate and juridical cause of the accident.

[2] As to the engineer having taken due precautions against the explosion occurring, all we can say is that the proper precaution to have taken would have been not thus unnecessarily to have stationed this engine so near this avenue where so many teams were going and coming. This was in itself negligence. Especially that the engineer, as he admits, saw this very wagon of plaintiff standing so near with the lady and child in it.

[3] Plaintiff at the time of the accident blamed himself for it, and later on said that he did not blame the defendant company; that he felt as if he had murdered his child, and defendant would base a defense on these admissions of plaintiff. But these admissions in no way add to, or take away from, the facts of the case; and the liability of defendant must be determined from these facts, and not upon any conclusion which plaintiff may at one time have drawn from them. Plaintiff failed to make the distinction between noise caused by the ordinary operation of a locomotive and noise of this kind; that is all. And as a consequence he blamed himself alone. And, moreover, when a catastrophe of this kind strikes us and we have taken against its occurrence only ordinary precautions, we feel that we ought to have taken extraordinary precautions, and that for not having done so, we are to blame. This was plaintiff's feeling.

[4] Plaintiff and his wife claim $3,000 for the death of their child. The amount we think entirely reasonable.

The judgment appealed from is set aside, and it is now ordered, adjudged, and decreed that the plaintiffs R. B. Patton and Mrs. Lotta Patton have judgment against the Frost-Johnson Lumber Company in the sum of $3,000, with legal interest thereon from this date, and that defendant pay the costs of this suit.

LECHE, J., takes no part.