**PARKER et ux. v. EMPLOYERS' CASUALTY CO. et al.**

No. 4757.

Court of Appeal of Louisiana. Second Circuit.

Feb. 5, 1934.

Hardin & Coleman, of Shreveport, for appellant.

John T. Carpenter, of Shreveport, for appellees.

TALIAFERRO, Judge.

The accident out of which arose the causes of action herein sued on involved the automobiles of Dr. I. Henry Smith and H. P. Parker, one of the plaintiffs. It occurred on Line avenue, between Stephenson and Gladstone streets, at 10 o'clock at night, February 10, 1933. A rain had fallen an hour prior, and the air was heavy. Dr. Smith, while driving

north on Line avenue, turned into the Crystal Filling Station, at southwest corner of intersection of Gladstone street with Line avenue, to buy gas; but finding the station closed for the night, he turned round and proceeded down (southerly) Line avenue with the intention of purchasing gas from the Sparco Station, on the opposite (east) side of the avenue, near the corner at Stephenson street, which he observed was open. Plaintiff's car, moving at a speed variously estimated at from 30 miles to 40 miles per hour, was on the right (east) side of Line avenue, going north. Dr. Smith swung his car to his left, diagonally across the avenue, heading towards the entrance to the Sparco Station, across the path of travel of the Parker car. To this juncture in the sequence of facts, there is virtually no dispute. The contact between the cars, if any, was slight; no damage resulting, but plaintiff's car was driven, in part at least, off of the street, east of the curb, and collided violently with an electric light pole, where it rested. In doing this it passed in front of Dr. Smith's car, which was also near the pole.

Plaintiffs' contention is that Dr. Smith's action in crossing the street in front of their car created a sudden emergency which confronted them, without fault on their part, an'd that there was no escape from a collision with his car except by adopting the course towards the pole; in other words, by veering the car to its right side sufficiently to escape contact with the Smith car. The evidence fairly well sustains this contention.

Dr. Smith contends that there was ample space between his car and the curb over which the Parker car could have safely passed, and that there was no necessity for abandoning the safety of the street for the more hazardous course. This contention is not supported by the testimony. Defendant, while denying negligence of any sort on his part, in the alternative, pleads the contributory negligence of Parker in bar of his and his wife's right to recover.

The lower court gave judgments for both plaintiffs against Dr. Smith only. The judgments are silent as to his alleged insurer, the Employers' Casualty Company, which was also made defendant. There is no complaint here of this part of the judgment. Dr. Smith appealed.

■ Dr. Smith admits he gave no signal or warning, and did not stop, look, and listen, as he undertook the left turn across Line avenue. It is not definitely shown that the headlights of his car were burning. It has been uniformly held that a left turn of an automobile in a street, even at intersections, which was not the case in this instance, is about the most hazardous movement that can be made, and should never be undertaken until the car's operator has carefully looked in all directions and satisfied himself that he

may negotiate the turn without jeopardizing the safety of others. Dr. Smith admits he did not do this. Plaintiffs were on their right side of the road, where they had a right to be, and, under the circumstances, were not negligent in trying to avert injury to defendant by suddenly adopting a line of travel that cleared his car. But for the intervening pole the effort would have been successful. They did not observe defendant's movements within time to have acted other than they did to try to avoid an accident.

■ Immediately after the accident defendant carried Mrs. Parker to a sanitarium in Shreveport and gave instructions that she be properly treated and he would see that the expense therefor was paid; and he also interested himself about having the damages to the Parker car repaired. On the scene of the accident he admitted that he was at fault, and after having time to reflect, the morning thereafter, he made a similar admission to the manager of the garage to which the damaged car had been taken. These admissions of negligence, standing alone, would not be sufficient to mulct the doctor in damages if the evidence did not support his own consciousness of negligence, reflected by the admissions. Liability cannot be created by a defendant's sudden exclamations, nor even by admissions made on reflection, unless there is in fact liability under the law. Junk v. Golden Ranch Sugar & Cattle Co., 122 La. 794, 48 So. 267; Razer v. Brown, 156 La. 1008, 101 So. 398; Francois v. Maison Blanche Realty Co., 134 La. 215, 63 So. 880, Ann. Cas. 1916B, 451; Patton v. Frost-Johnson Lbr. Co., 142 La. 117, 76 So. 580; Elston, Prince & McDade v. Economy Cash Store, 1 La. App. 36.

But when such admissions are considered in the light of, and coupled with, testimony fairly conclusive of the negligence of the one making the admissions, a case is established beyond which there can be no peradventure of doubt.

The lower court gave Mrs. Parker judgment of $100 for the injuries sustained by her. We would be disposed to increase this award materially if it had been asked for by answer to the appeal.

■ The judgment in favor of Parker covered the physician's and hopsital bills incurred in treating his wife $44.50, and $200 for repairs to and replacements on his car. The total of the garage bill for these repairs and replacements is $216.65. The reasonableness of this bill is seriously challenged by defendant. Dr. Smith testified that the morning following the accident, after the car had been brought to the garage that repaired it, the manager told him that he estimated the work and parts would cost not exceeding $150, possibly not more than $125, and that by using some secondhand parts he thought the total cost could be held down to $85. Dr.

Smith then told him the expense of repairs and parts would fall on his insurer. It is intimated that this information caused the expense bill to assume proportions which would not otherwise have happened. The garage manager states that the estimates quoted Dr. Smith for making the repairs and furnishing the parts did not take into consideration the damage to the car's frame, of which he had no knowledge at the time. However, the car was then in his garage for repairs and it is inconceivable that it had not been closely inspected for the purpose of arriving at an intelligent estimate of the expense necessary to recondition it. This manager admitted under a rather grueling examination on the witness stand that practically all of the major parts and accessories used in repairing the car were old or secondhand stock, taken from wrecked or worn-out automobiles. The account filed in evidence lists separately the various parts used on this repair job, but the cost of each is not extended thereon, only the total being given; and the garage manager reluctantly gave testimony touching the sale price of some of such parts when new.

The lower court disallowed a small part of this account, evidently believing that it was to that extent unreasonable and excessive. We think a larger amount should be disallowed.

For the reasons herein assigned the judgment in favor of Mrs. Lula Mae Parker is affirmed, and that in favor of H. P. Parker is reduced to $194.50; and, as thus amended, the judgment appealed from is affirmed.