DORÉ, Judge.
This suit arises from a collision that occurred about 5 P.M. on December 22nd, 1948 on U. S. Highway 25 about four miles south of the City of New Iberia, between a Ford sedan owned by Oliver J. Manuel and a tractor owned by Louis Cartimiglia. The tractor, which was being operated at the time by Elwood O’Brien, was pulling a cart loaded with cane. The Ford was operated by Mrs. Manuel, with Mrs. Donald McQuaig riding with her as a guest passenger. The tractor had come onto the highway about one-fourth mile from where the collision took place, and proceeded northward, toward New Iberia, to the point of the collision. The Ford had been trailing behind the tractor, with both vehicles travelling about fifteen miles an hour or perhaps a little faster. Where the collision occurred a small private road turned left off the highway and went a short distance to a cane derrick, which was to be the destination of the tractor. Plaintiff alleges that his driver gave a proper signal to indicate a left turn • and then executed a left turn across the highway, whereupon defendant’s car attempted to pass the tractor or attempted to reach the side road ahead of the tractor and in so doing struck the left side of the tractor. He alleged that Mrs. Manuel was negligent in driving too close to the tractor, in overtaking the tractor without warning, not keeping a proper lookout, and in doing nothing to avoid the accident; and he prayed for damages of $888.40, the cost of repairing the tractor, naming as defendants Oliver J. Manuel, his wife, and their insurance carrier, The State Farm Mutual Automobile Insurance Company of Bloomington, Illinois.
The three defendants denied generally the allegations of plaintiff’s petition, pleaded contributory negligence on the part of plaintiff’s driver, and then reconvened for the cost of repairing the Ford, in the sum of $261.01, naming as defendants in recon-vention Louis Cartimiglia and his insurer, the Maryland Casualty Company. The *622 lower court rejected plaintiffs demands and rendered judgment in favor of Oliver J. Manuel, plaintiff in reconvention, for $261.-01, the cost of repairing his car, with interest and costs.
Highway 25 in this vicinity runs generally north and south and consists of a paved slab eighteen feet wide with dirt shoulders approximately twelve feet wide. Elwood O’Brien, the driver of the tractor, gave testimony indicating that when he turned onto the highway “about four acres” from where the collision occurred, he saw defendant’s car approaching. It apparently trailed him up to the time of the accident. O’Brien testified further that the tractor would go only 25 miles an hour, that he had not been driving as fast as it would go, and that he slowed down some to make his left turn. As to his operations he testified further as follows:
“Q. And you slacked your speed just as you made the turn? A. I slacked my speed before I made the turn.
“Q. How long before? A. About ten or fifteen foot before I got where I had to turn and I throwed out my hand.
* * * * * *
“Q. Before you turned, did you look behind you? A. Yes, I looked behind me. There was one car .coming way up the highway. It wasn’t right in the back of me when I turned.
******
“Q. If this Ford was following closely in the back of your cart, could you have seen it? A. No, I couldn’t have seen it. It was right close up underneath me, but it wasn’t close underneath me because it cut off. You can see from the marks of the tires it cut off before it got up to me.”
It is impossible to tell from his testimony what he meant when he said he looked behind him and there was one car coming way up the highway. At any rate, his testimony is in direct conflict with the physical facts.
There were two colored boys riding on top of the load of cane pulled by O’Brien, one being a brother of the driver and one a cousin. The brother, Austin O’Brien, testified that he and his little cousin tried to give Mrs. Manuel a signal to stop as they neared the side road leading to the derrick. Junius Derouen, another witness for plaintiff, was standing by the derrick at the time of the accident. He testified that he saw the tractor driver wave his hand to signal his left turn. He did not hear a horn sounded from the Ford, but his tractor, by which he stood, was running so he could not have been expected to hear it if it was blown. Julius Boyance, another colored man who testified for plaintiff, had just knocked off from cutting cane and was in the field about fifty feet away walking toward the highway at the time of the collision. He says he heard no horn. Other than this his brief testimony was not significant. O’Brien, the tractor driver, of course says he did not hear a horn sounded from the car behind him. Louis Car-timiglia, the ‘plaintiff, arrived at the scene about 6 P.M. The tractor and cart had by then been moved off the pavement and onto the shoulder. He examined the scene and testified that tire marks showed that the Ford had gone off the pavement and onto the shoulder about thirty feet before the collision, and that there were no skid marks and no other evidence that the Ford’s brakes had been applied.
Mrs. Manuel testified that shortly before the collision she pulled into the left lane to see if the road was clear so as to permit her to go around the tractor and that, on seeing the road was clear of other traffic, she began sounding her horn and accelerated her speed; that she had been driving about fifteen miles an hour, but increased at this time to about twenty or twenty-five; that when the front of her car was alongside the trailer load of cane the tractor turned sharply to the left and she immediately swerved to the left shoulder. She insists that as the tractor driver saw her about to pass him he tried to straighten out; but whether he did or not is immaterial to the issues. The collision occurred on the shoulder, and the impact was between the right front of the car and the left front wheel of the tractor, with the result that both vehicles were damaged, but none of the parties received injury. Mrs. Manuel admits that she did not apply *623 her brakes, her explanation being that at first she thought the loaded cane cart would strike her car if she tried to slow down and return to the right lane of traffic, and then she thought the tractor driver was trying to straighten out so she' apparently acted on the impulse that her escape might be to try to go on around him. She is sure that O’Brien, the tractor driver, did not signal for his left turn; and while she observed the two boys on top of the' load of cane she did not see any signal from them.
Mrs. McQuaig, who is a high school teacher at Bogalusa and who was a passenger in the Manuel car, substantiated Mrs. Manuel as to the pertinent facts. She stated that Mrs. Manuel made sure there were no other cars approaching, then started to blow her horn and pick up speed. She says she saw no indication that the tractor would turn left off the highway; but after a collision became emminent she also got the impression that the tractor driver tried to get back on the right side of the road.
Plaintiff’s case is based on the contention that there was no negligence on the part of the tractor driver and that Mrs. Manuel was negligent in not sounding her horn, in trailing too closely behind the tractor, in failing to apply her brakes or do anything else to avoid the collision after the tractor began the left turn.
Plaintiff’s first contention, to-wit, that there was no negligence on the part of the tractor driver, is in error. The picture of the tractor put in evidence by plaintiff shows that the driver’s seat was located in the center of the tractor and not on the left side as is the driver’s seat on an automobile. If we take as correct the driver’s testimony that he “stuck out his hand” ten or fifteen feet before he reached the drive he wanted to turn into, it avails plaintiff nothing for the signal was not timely given nor could it have been seen by anyone driving behind the loaded cane cart. Further, the tractor was not equipped with a rear view mirror as required for all motor vehicles by Section 9(d) of the Highway Regulatory Act, LSA-RS 32:287. A left turn is a dangerous maneuver and must be executed with the utmost care. Parker v. Employers Casualty Co., La.App., 152 So. 373; McDonald v. Zurich General A. & L. Ins. Co., La.App., 25 So.2d 923; Gaines v. Standard Accident Ins. Co., La.App., 32 So.2d 633. In the present instance O’Brien knew a car was behind him for he had seen the car only a minute or two before, when he turned onto the highway; yet he attempted a left turn without any reasonable effort to ascertain whether the turn could be made in safety. This was gross negligence under the circumstances.
To try tc fix contributory negligence on Mrs. Manuel plaintiff has cited several cases, but none of them is in point here. Three of them involved situations where one vehicle ran into the rear of another when the leading vehicle slowed or stopped on the highway. In Falgout v. Younger, La.App., 192 So. 706, one truck attempting to overtake another one collided with an on-coming vehicle. In Greer v. Ware, La.App., 187 So. 842, a school bus in front failed to yield the right of way to a truck in the rear and a collision occurred when the driver of the second truck tried to pass anyhow. In Overstreet v. Ober et al., 14 La.App. 633, 130 So. 648, a car ran into the left rear of a moving truck after the truck had slowed considerably, the driver had signalled for a left turn and had almost completed a wide, sweeping turn. The facts of that case are not similar to the present. Plaintiff quoted from Ravare v. McCormick & Co., La.App., 166 So. 183, where the court said that a motorist passing another vehicle does the passing at his own risk. But granting the correctness of the statement made there in so far as it pertained to the facts of that case, it is not correct to say that a passing motorist assumes the risk of a sudden unexpected left turn by the leading vehicle. Plaintiff also quoted the rule found in LSA-R.S. 32:233 that a motorist overtaking another shall pass at a safe distance to the left and not again drive to the right side until clear of the vehicle being passed. But Mrs. Manuel did not violate that rule.
There is no reason for disbelieving the testimony by Mrs. Manuel and *624 the passenger with her that she blew her horn before and as she tried to pass the tractor. The fact that it may not have been heard was due to the great amount of noise being made by the tractor and cane cart it was pulling. Mrs. Manuel was not guilty of any negligence unless it be that she should have applied her brakes after the tractor began its left turn. But at that instant she was confronted with an emergency not created by her, and she is not to-be held to the highest degree of care in such circumstances. But even if she had applied her brakes as soon as she saw the tractor turn to the left it is highly doubtful that she could have stopped in time to avert a collision. She was travelling about 20 miles per hour, or 29 feet per second; and it seems to be agreed by all of the witnesses that she only travelled some fifty feet further before the impact. We do not feel that any negligence on her part has been shown. The circumstances here are very much like the circumstances in Williams v. Herrin Transfer & Warehouse Co., La.App., 153 So. 313, where nothing plaintiff could have done would have avoided an accident.
For these reasons the judgment of the trial court is affirmed.