BAILES, Judge.
This is a tort action brought by plaintiff to recover damages ex delicto arising out of a vehicular accident. The plaintiffs are-Mrs. Willie Jean Morris and her collision insurer, Twin States Insurance Company. The defendants are Sam Alfonso and Gulf' Bottlers of Baton Rouge, Inc., and their liability insurer, Travelers Insurance Company.
The trial court rendered judgment in favor of the plaintiffs and against all defendants, in solido. Mrs. Morris was awarded! damages in the amount of $3,503.98, and Twin States Insurance Company was awarded judgment in the amount of $144.52.. From this judgment, all defendants perfected a suspensive appeal, and the plaintiff, Mrs. Morris, appealed devolutively. We find the judgment appealed from is correct as to liability, however, it is excessive as to quantum.
The accident between plaintiff’s and defendants’ vehicle occurred on U. S. Highway 51 about one mile south of Kentwood, Louisiana, on September 3, 1963. Plaintiff was driving her new 1963 Dodge sedan south and was following a soft drink truck owned by Gulf Bottlers of Baton Rouge, Inc., and driven by Sam Alfonso. These two vehicles were preceded by another automobile driven by a Mr. Amos Cutrer. The Cutrer vehicle turned right into a private driveway at approximately the same time the plaintiff’s vehicle entered the passing lane preparatory to passing the beverage truck.
The plaintiff contends that when the front bumper of her automobile was almost even with the rear bumper of the beverage truck, the truck suddenly swerved or veered into the path of her automobile striking it *704 on the right front fender. On the other hand, it is the defendants’ position that as Alfonso slowed his truck to allow the Cutrer vehicle to make its turn, he, Alfonso, saw plaintiff’s vehicle behind his truck out of control and zigzagging on the highway. Alfonso’s testimony is to this effect. Further, they contend that Alfonso attempted to pull to his right to give plaintiff room to pass hut the right front fender of plaintiff’s vehicle hit the left rear bumper of the truck.
There were no witnesses to the accident except the drivers, Mrs. Morris and Sam Alfonso, and a young woman by the name of Erma Bellazer who was seated on the front porch of a residence a short distance from the highway. No law enforcement officer was notified or called to the scene to investigate the accident. Consequently, we do not have the benefit of the usual facts, such as point of impact, skid marks, debris, condition of highway, width of highway and shoulders and other like information surrounding the accident, ordinarily ascertained in an official investigation.
Mr Alfonso testified that he merely touched his brakes to slow his truck to allow the Cutrer automobile time to complete its turn, and that it was not necessary for him to go into the opposite lane. He further testified that he was aware of the Morris vehicle to his rear just a second or so before it struck him, and that his speed was between 30 and 35 mph.
Mrs. Morris testified that she was driving about 40 to 45 mph just prior to the collision. She stated that as she pulled into the left lane to pass the truck and proceeded to the rear of the truck, the truck, without any warning or signal, suddenly swerved into her lane. After the impact, she managed to stop her automobile on the left shoulder. Mrs. Morris’s testimony is supported by that of the young woman who was sitting on the front porch of the nearby residence. This witness, Erma Bellazer, testified that it was necessary for the beverage truck, because of the closeness of it to the Cutrer vehicle, to turn into the left lane to keep from hitting the Cutrer vehicle when it turned into the driveway. At this time, the Morris vehicle had already begun its passing maneuver and was entirely in the left lane. She testified that the truck pulled into the left lane in front of the Morris automobile, and that prior to the time Mrs. Morris attempted to pass the beverage truck she had been driving in a straight line and had not been swaying in the road.
We find no merit in defendants’ first specification of error that the trial court was in error in concluding that Sam Alfonso drove or veered into the passing lane occupied by Mrs. Morris.
The trial court found that the plaintiffs had sustained the burden of proof of establishing that the accident was caused solely and entirely by the beverage truck driver, Sam Alfonso, invading or veering into the passing lane at a time when it could not be done safely. It is our conclusion, after a careful study of the record, that this accident was caused entirely by the negligence of defendant, Sam Alfonso, which was the sole proximate cause of the accident.
The pronouncement of the court in the case of Crane v. London (La.App., 1963) 152 So.2d 631, is apropos here:
“[1-4] Principles are well established in the jurisprudence, as well as by statute, that a motorist, before turning from a direct line upon a highway, shall first see that such movement can be made in safety; that whenever the operation of any other vehicle may be affected by such movement, the motorist shall give a signal plainly visible to the drivers of such other vehicles of his intention to make the turn.”
Also see Crier v. Marquette Casualty Co. (La.App., 1964) 159 So.2d 26; Myles v. Creuzot (La.App., 1964) 166 So.2d 533, 535; and Cartimiglia v. Manuel (La.App., 1952) 55 So.2d 620.
*705 Passing- now to the question of quantum we affirm the trial court’s award of $144.52 to plaintiff, Twin States Insurance Company, and the award of $100.00 to plaintiff, Mrs. Willie Jean Morris; these amounts, collectively represent the amount of physical damage done to the Morris vehicle. There is no dispute as to the correctness of this amount.
Defendants assign as their second specification of error that the award to the plaintiff of the sum of $3,000 is excessive. While contending that there is no liability, defendants’ position is that if the plaintiff, Mrs. Morris, is entitled to judgment, the amount for pain and suffering and injury to her hack should not exceed $2,000.
The plaintiff argues that the award of the trial court is grossly inadequate and should he increased to $15,000. The numerous cases cited by the plaintiff are readily distinguished from the facts of the instant case. It would serve no useful purpose to discuss the distinctions. Tire award to be made in any case must be justified on the facts peculiar to that case.
The record reflects that on the afternoon of the accident, the plaintiff consulted Dr. Corbin Faller, a general practitioner in Kentwood. He stated that he did not feel qualified to evaluate her injuries since she had had a previous operation on her back and he referred her to Dr. Albert Dewayne Foreman since he had performed that operation. It was his opinion at that time that the plaintiff had not injured herself but he later expressed the opinion that she had sustained an acute lumbo-sacral strain.
The plaintiff consulted Dr. Foreman, a neuro-surgeon practicing in Baton Rouge, on September 5, 1963, November 7, 1963, December 8, 1964, and January 26, 1965. He diagnosed her condition as being a sprain of the back. She had undergone an operation in 1956 to alleviate a ruptured disc of the twelfth thoriac joint and he thought that she might have had a rccur-rence of the ruptured disc. However, in the examination of January 26, 1965, he stated that it was his conclusion that she was not suffering from a disc injury but had sprained her back at the level of the previous disc rupture. During his first examination, he noted muscle spasms but these had disappeared on the later examinations. The only significant objective symptom which he noted was the absence of the patella reflex of the left knee. He testified that this loss of reflex was not connected with the 1956 surgery. It was his opinion that the plaintiff would have permanent partial disability and that there was a possibility that she would find it necessary to undergo surgery in the future to alleviate her suffering.
Dr. James F. Halley, an orthopedic surgeon practicing in Baton Rouge, examined Mrs. Morris on October 3, 1963, October 15, 1963, October 29, 1963, and November 12, 1964. He stated that during these examinations he noticed pain and tenderness on extremes of motion but stated that her back was improving during this time and it was his opinion that it would continue to improve. He prescribed muscle relaxants and analgesics, and required the plaintiff to sleep on a hard pad and apply heat to her back. Dr. Halley noted that there was a fluctuation of the patella reflex of the left knee. He stated that it was absent on his first examination, present on the second, and was again absent on the last two examinations. However, it was his opinion that the previous laminectomy performed in 1956 could have been responsible for the absence of the left patella reflex. Dr. Halley stated that it was his opinion that Mrs. Morris had suffered a sprain of her back in the accident but that the condition of her back would continue to improve.
Mrs. Morris testified that, while she had suffered with her back for approximately one year following the operation in 1956, she had no more trouble with her back until the automobile accident. She had taken care of her three children and had performed her duties as a housewife without *706 any pain. She also worked for the State Tourist Bureau in the mornings. Since this accident, she testified, her activities have been curtailed because of the pain in her back and the numbness in her left leg. She stated that she is no longer able to take care of her children or do the housework but must have a maid to do it for her. However, she also testified that she had had a maid even prior to the accident but it is her contention that now she must have the maid for a greater length of time than previously. Since the accident, she states that she is no longer able to sit or stand in one position for any length of time and is frequently troubled with her knee giving way and causing her to fall.
This testimony was substantiated by lay witnesses, Lionel Johnson, Mrs. Wessie Johnson, J. L. Felker, and Louise Miller.
It is true that, in regard to appellate review of general damages, the trier of fact has much discretion in the awarding of damages and this discretion should not be disturbed on appeal in absence of clear abuse. See LSA-C.C. Article 1934(3), Ballard v. National Indemnity Company (1964) 246 La. 963, 169 So.2d 64, and Gaspard v. LeMaire (1963), 245 La. 239, 158 So.2d 149. However, in this instance, it is our opinion that the trial judge has abused his discretion by awarding an excessive amount of damages to the plaintiff, Mrs. Morris.
It is our opinion that the injury suffered by Mrs. Morris was only a back sprain, necessitating no hospitalization and requiring no heavy medication or strenuous treatment. She was forced to be absent from work for only eleven days from the date of the accident until the date of the trial and she testified that this time was missed because of trips to the doctors’ offices. While we are sure that her activities have been curtailed as a result of this accident, we find the record discloses the fact that for a period of a year, she consulted no doctor and that over a period of two years, her drug and medicine bills totaled only $23.98, all of which indicates to us that her injury is not as serious as she contends. It is our conclusion that an award of $2,000 for pain and suffering is adequate and will do justice between the parties.
We find the plaintiff, Mrs. Morris, is entitled to be awarded the following special damages, viz: Loss of earning, $110; Medical expenses of Dr. Foreman, $150; Dr. Halley, $55; X-rays, $50; Dr. Faller, $15; and drugs, $23.98; and the sum of $100 for physical damages to her automobile, thus totalling $503.98.
Accordingly, the award of the trial court in favor of Twin States Insurance Company in the amount of $144.52 is affirmed; and the judgment of the trial court in favor of plaintff, Mrs. Willie Jean Morris, and against all defendants, in solido, is amended and reduced to the sum of $2,503.98, together with legal interest thereon from judicial demand, and in all other respects the judgment appealed from is affirmed.
Defendants are cast for the costs of this appeal.
Amended and affirmed.